1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10
11
12
13
14
15
16
17

LUJUANA WOOD,

               Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

CASE NO.    C07-5085RJB-KLS

REPORT AND
RECOMMENDATION

Noted for January 4, 2008

18
19
20
21
22
23
24

Plaintiff, LuJuana Wood, has brought this matter for judicial review of the denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

25

FACTUAL AND PROCEDURAL HISTORY

26

Plaintiff currently is 56 years old.[1] Tr. 25.  She has a high school education and past work

27
28

      [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

experience as a secretary, front desk clerk, solderer, retail sales clerk, and receptionist. Tr. 17, 83, 88, 91.

On October 22, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of July 23, 2003, due to a neck injury. Tr. 17, 69-71, 82.  Her application was denied initially and on reconsideration. Tr. 25, 27.  A hearing was held before an administrative law judge ("ALJ") on February 3, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 313-41.

On June 29, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)    at step two, plaintiff had "severe" impairments consisting of degenerative disc disease of the cervical and lumbar spine, status-post cervical fusion and hypertension;

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4)    at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which did not preclude her from performing her past relevant work.

Tr. 17-24.  Plaintiff's request for review was denied by the Appeals Council on January 25, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981.

On February 22, 2007 plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a)    the ALJ erred in evaluating the medical evidence in the record;

(b)    the ALJ erred in assessing plaintiff's credibility;

(c)    the ALJ erred in evaluating the lay witness evidence in the record; and

(d)    the ALJ erred in assessing plaintiff's residual functional capacity.

Defendant agrees the ALJ erred as argued above by plaintiff, but asserts this matter should be remanded for further administrative proceedings.

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

1    Given the parties' agreement that the ALJ erred in finding plaintiff to be not disabled, the only

2    issue remaining concerns whether to remand this matter for further administrative proceedings or for an

3    outright award of benefits.  For the reasons set forth below, the undersigned recommends that the ALJ's

4    decision be reversed, and that this matter be remanded to the Commissioner for an award of benefits.

5                                                     DISCUSSION

6    This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

7    Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

8    to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

9    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

10   v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

11   a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

12   1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

13   one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749

14   F.2d 577, 579 (9th Cir. 1984).

15   The Court may reverse the ALJ's decision and remand this case "either for additional evidence and

16   findings or to award benefits."  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Generally, however,

17   when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand

18   to the agency for additional investigation or explanation."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.

19   2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the

20   claimant is unable to perform gainful employment in the national economy," that "remand for an

21   immediate award of benefits is appropriate."  Id.  This is such a case.

22   Benefits may be awarded where "the record has been fully developed" and "further administrative

23   proceedings would serve no useful purpose."  Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

24   1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

25       (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
         evidence, (2) there are no outstanding issues that must be resolved before a
26       determination of disability can be made, and (3) it is clear from the record that the ALJ
         would be required to find the claimant disabled were such evidence credited.

27   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because,

28   all three of the above factors have been met in this case, the record has been fully developed, and remand

REPORT AND RECOMMENDATION
Page - 3

1   for further proceedings would serve no useful purpose, benefits should be awarded here.

2   I.      Medical Opinion Source Evidence from Dr. Connelly

3           Defendant argues the errors made by the ALJ in evaluating the medical and other evidence in the

4   record are correctable with further administrative proceedings.  Defendant argues, for example, that

5   despite the January 13, 2006 opinion of Kevin F. Connolly, M.D., that plaintiff had "become permanently

6   and totally disabled" when considering her physical condition "as a whole" (Tr. 302), one could still

7   reasonably conclude she might be capable of doing work of some kind, even though she should not

8   perform repetitive clerical or other similar types of work that exacerbated her pain syndrome.

9           As noted by defendant, the ALJ rejected the opinion of Dr. Connelly, plaintiff's treating physician,

10  primarily on the basis that it was not supported by the objective clinical and neurological findings in the

11  record. Tr. 20-21.  Also as noted by defendant, however, Dr. Connelly further opined that plaintiff's neck

12  pain was "mechanical" in nature, and more specifically "status post cervical dicectomy and fusion," and a

13  "chronic myofascial pain syndrome," as well as "evidence of right carpel tunnel syndrome." Tr. 257.  The

14  difficulty with mechanical neck pain, Dr. Conolly continued, was that while neurological findings "may be

15  normal," this only means that one "cannot document specifically that a nerve is being pinched as the

16  source of the problem, not that there is not a problem." Tr. 258.

17          Despite Dr. Connolly's seemingly unequivocal opinion that plaintiff had become permanently and

18  totally disabled, and that lack of abnormal neurological findings does not necessarily mean plaintiff does

19  not have a problem, defendant asserts the many normal neurological findings in the record "are enough to

20  give one pause." (Dkt. #23, p. 5).  Defendant argues that "[w]hile such [normal] objective evidence would

21  not be enough to discredit a disability claim, the surprisingly modest findings do raise questions about the

22  extent of the impairments." (Id.).  The undersigned finds defendant's reasoning unpersuasive.  Although it

23  may seem unusual to the lay person that a patient may experience debilitating pain without clear objective

24  medical findings, again Dr. Connolly noted this is in fact the nature of plaintiff's condition.

25          The Ninth Circuit has emphasized the importance of treating physician opinions in the evaluation

26  of medical evidence, and in general such opinions are given greater weight than to the opinions of those

27  who do not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  It is true that an ALJ

28  need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately

supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, however, no other physician has opined that abnormal neurological findings are required to establish the existence or severity of plaintiff's impairment or its actual impact on her ability to work.

Dr. Connolly's disability opinion, furthermore, is neither brief nor conclusory in that he provides an extensive explanation concerning plaintiff's condition and her ability to work. See Tr. 229-60, 301-02. In addition, that opinion, though again perhaps lacking in corroborative objective neurological findings, is supported by the record as a whole.  There are only two other opinions from medical doctors in the record that directly address plaintiff's ability to work.  One is from a consulting non-examining physician, Robert G. Hoskins, M.D., who found plaintiff to be capable of performing essentially light work on July 18, 2004. Tr. 222-26.  A non-examining physician's opinion, however, may constitute substantial evidence only if "it is consistent with other independent evidence in the record." Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.  No other medical source in the record has so opined.

The second opinion, on the other hand, is provided by Daniel A. Brzusek, D.O., who independently examined plaintiff on December 4, 2003, and who, like Dr. Connolly, despite fairly unremarkable objective clinical findings, opined as follows:

> Because of progression of her physical condition, she is unable to work at this time in spite of an understanding employer.  It is unlikely she can be retrained to another lighter type of occupation. . . .
>
> . . . The patient has gotten worsen [sic] over the last several years regarding her chronic neck, upper back and upper extremity problems.  Although she might get some symptomatic relief with treatment provided by Dr. Connolly, I sincerely doubt she will have a cure.  It may be a challenge to get her back to an occupation that is viable for her at the present time. . . .

Tr. 183-84, 188-89.  As such, the record contains an opinion from a treating and one from an examining physician finding plaintiff to be unable to work due to her neck pain.  The opinion of Dr. Hoskins thus is simply insufficient to overcome the weight due the independent opinions of Dr. Connolly and Dr. Brzusek. Lester, 81 F.3d at 830-31 (examining physician opinion, like that of treating physician, is entitled to greater weight than opinion of non-examining physician).

Given that the weight of the medical opinion source evidence in the record establishes that the neck

1  pain plaintiff complains of is a real impairment and prevents her from being able to work, regardless of the

2  presence of confirming objective neurological findings, the Court would be inappropriately inserting itself

3  into an area in which it lacks expertise by questioning the bases of those opinions in the absence of other

4  treating or examining opinion source evidence in the record contradicting them.  In effect, the Court would

5  be substituting its own lay opinion for that of Drs. Connolly and Brzusek, which the ALJ is prohibited

6  from doing and the Court should not do. See Gonzalez Perez v. Secretary of Health and Human Services,

7  812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of

8  physician); see also McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir.

9  1983); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978).

10         Lastly, to the extent the ALJ thought Dr. Connolly's opinion was insufficiently supported by the

11  objective medical evidence in the record and required further clarification, he could have re-contacted Dr.

12  Connolly as now argued by defendant.  That is, the ALJ himself has the duty "to fully and fairly develop

13  the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144,

14  1150 (9th Cir. 2001) (citations omitted).  Although it is only where the record contains "[a]mbiguous

15  evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence,"

16  that the duty to "conduct an appropriate inquiry" is triggered, this is essentially what defendant is asserting

17  is the case here. Id. (citations omitted).  Thus, even if further clarification was needed in this case, the time

18  for seeking such clarification was prior to the issuance of the ALJ's opinion.

19  II.    Statements from Plaintiff's Former Work Supervisors

20         Next, with respect to the lay witness statements from plaintiff's former work supervisors (Tr. 79-

21  80), defendant argues that while those statements tend to confirm Dr. Connolly's concerns regarding her

22  neck problems and ability to sustain work, they do not establish disability because they are not statements

23  from medical sources.  Plaintiff counters that under Schneider v. Barnhart, 223 F.3d 968 (9th Cir. 2000),

24  lay witness evidence can form the basis for a disability determination.  It is true that where lay witness

25  evidence is improperly rejected, it may be credited as a matter of law. See Schneider, 223 F.3d at 976

26  (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became

27  clear claimant's limitations were sufficient to meet or equal listed impairment).

28         Here, however, neither of the statements from plaintiff's former supervisors definitively establish

1    that plaintiff is incapable of performing all work.  For example, Patricia Barto, one of plaintiff's former

2    supervisors, stated in relevant part as follows:

> Over the past months Lu's work performance, though still acceptable, has deteriorated.
> Her attention span is not what it once was and her lack of attention to details has caused
> mistakes.  At times, she needs to be reminded of protocol procedures that she's always
> followed.  She's always performed above and beyond her job description, anticipation
> [sic] needs and taking care of them.  Now just fulfilling her job requirements seems to
> be difficult though she manages through sheer willpower, even when it's obvious how
> much pain she is in.

7    Tr. 79.  While this statement certainly indicates plaintiff was having problems at her former job, even Ms.

8    Barto admits she still managed to fulfill that job's requirements in an acceptable manner.

9          As for Janette R. Hutchison, the other former work supervisor, although she noticed plaintiff was

10   having issues with pain, swelling, cold sweats, and trembling, she gave no indication that plaintiff could

11   not perform her job, let alone would be unable to perform any other work. Tr. 80.  In addition, as noted by

12   the Ninth Circuit, the courts do have "some flexibility" in how they apply the "credit as true" rule. Connett

13   v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  Further, unlike here, the Court of Appeals in Schneider

14   dealt with the situation where the Commissioner failed to cite any evidence to contradict the statements of

15   five lay witnesses regarding the claimant's disabling impairments. See 223 F.3d at 976.

16   III.    The Opinion of the Industrial Appeals Judge

17         On November 10, 2005, a judge with the Washington State Board of Industrial Insurance Appeals

18   issued a decision, in which plaintiff's "status post cervical discectomy and fusion" and "chronic

19   myofascial pain syndrome" was determined to constitute an occupational disease. Tr. 35.  In addition, the

20   "period of exposure" to repetitive work at plaintiff's former employer was deemed to be "the last injurious

21   exposure." Id.  Accordingly, the industrial appeals judge reversed the December 20, 2004 order of the

22   Washington State Department of Labor and Industries ("DLI"), rejecting plaintiff's DLI claim and

23   assessing her with an overpayment, and remanding the matter to the DLI to issue an order to allow

24   plaintiff's claim and reverse the overpayment assessed against her for benefits paid. Id.

25         In addition, in his findings of fact section, the industrial appeals judge stated in relevant part as

26   follows:

27       3.    From 1997 to 2003, Lujuanna L. Wood . . . worked as an office secretary . . .
             with Avada Audiology Hearing & Care.

28       4.    As of July 23, 2003, Lujuanna L. Wood's exposure to the repetitive work at
             Avada Audiology Hearing & Care bore a casual relationship to her increased

1

2

neck and upper extremity pain caused by her conditions of status post cervical discectomy and fusion, and chronic myofascial pain syndrome.

5.    Lujuanna L. Wood's conditions first became disabling on or about July 23, 2003.

3

4    Tr. 34-35.  Defendant argues that although the ALJ failed to give proper attention to these findings, the

5    industrial appeals judge said nothing about the possibility of plaintiff doing any other work in the national

6    economy, and, as such, does not establish plaintiff is disabled.

7           Plaintiff counters that when looking at the record as whole, the industrial appeals judge's opinion

8    that plaintiff could not perform her past work is quite significant in the context of the Social Security

9    regulations.  Specifically, plaintiff argues that a finding that she could not perform even sedentary work

10   reflects very serious limitations resulting from her impairment.  But as defendant points out, the industrial

11   appeals judge did not find plaintiff could do no other work at the sedentary work level.  Rather, he merely

12   concluded that she could not perform her past job as an office secretary.  At most, therefore, the industrial

13   appeals judge's decision calls into question the ALJ's past relevant work finding.

14          Plaintiff further argues, however, that even if she is capable of doing some kind of sedentary level

15   work, she should be found disabled pursuant to the Medical-Vocational Guidelines (the "Grids") in light of

16   her age and inability to perform her past work.  Again, however, the industrial appeals judge's decision

17   does not definitively establish that plaintiff is limited in performing any job other than her prior job as an

18   office secretary.  Indeed, it does not appear the judge even used the term sedentary, let alone was familiar

19   with or considered the requirements for establishing disability under the Social Security Act and related

20   regulations and case law.  This issue need not be reached, however, given the opinions of Drs. Connolly

21   and Brzusek discussed above, and the issue of plaintiff's credibility discussed below.  That is, plaintiff's

22   testimony and the medical evidence provided by Dr. Connelly and Dr. Brzusek provide a sufficient basis

23   upon which to find that plaintiff is entitled to an outright award of benefits.

24   IV.    Plaintiff's Credibility

25          Defendant argues that issues with both plaintiff's credibility and the opinion of Dr. Brzusek can be

26   re-evaluated in light of an updated medical source statement from Dr. Connolly.  However, as discussed

27   above, the opinions of Drs. Connolly and Brzuesek were clear, and therefore they require no further

28   update. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record

1    triggered only when there is ambiguous evidence or when record is inadequate to allow for proper

2    evaluation of such evidence).  Defendant further argues that, as the ALJ noted, plaintiff's credibility was

3    undermined by the normal objective medical findings in the record, including those of Dr. Brzuseck.  The

4    issue of the lack of objective findings already has been thoroughly addressed.  For the same reasons that

5    those findings do not provide an adequate basis for challenging the opinions of either Dr. Connelly or Dr.

6    Brzusek, they also do not provide a valid basis for challenging plaintiff's credibility here.

7         The Ninth Circuit held in Connett that remand for an award of benefits is required where the ALJ's

8    reasons for discounting a claimant's credibility are not legally sufficient, and "it is clear from the record

9    that the ALJ would be required to determine the claimant disabled if he had credited the claimant's

10   testimony." 340 F.3d at 875.  The Court of Appeals went on to state, however, that it was "not convinced"

11   the "crediting as true" rule was mandatory. Id.  Thus, at least where findings are insufficient as to whether

12   a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in

13   applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting

14   as true" rule, but noting its contrary holding in Connett).

15        This case is similar to that in Benecke, where the Ninth Circuit found that the ALJ not only erred in

16   discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians.

17   379 F.3d at 594.  The Court of Appeals credited both the testimony of the claimant and the evaluations of

18   her physicians as true. Id.  It also was clear in that case that remand for further administrative proceedings

19   would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id.

20   at 595-96.  As in Benecke, the ALJ erred in discounting the opinion of Dr. Connolly, which, along with the

21   opinion of Dr. Brzusek, establishes plaintiff is unable to do any work.

22        Plaintiff's testimony, and that of the vocational expert who testified at the hearing, also shows that

23   she is disabled.  For example, plaintiff testified that during a typical day she had to lay flat from two to

24   four times, depending on her level of pain, for between one-half and one hour at a time. Tr. 334-35.  In

25   response to the question of whether there were any jobs available plaintiff could do if her testimony was

26   taken to be fully credible, the vocational expert testified that there were no such jobs, and that laying down

27   that many times a day and for that long each time was "typically not allowed in the workplace without

28   some type of accommodation." Tr. 338-39.

V.      The Credit as True Rule

Defendant argues the credit as true rule is not mandatory in the Ninth Circuit, and that it has been applied by the Court of Appeals in a discretionary fashion.  The undersigned agrees.  For example, while the opinion of a treating or examining physician that has been improperly rejected by the ALJ generally is credited "as a matter of law," where the ALJ is not required to find the claimant disabled on the crediting of that evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Lester, 81 F.3d at 834 (citation omitted); Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  In addition, although a claimant's symptom testimony that has been improperly rejected by the ALJ in general also is credited as a matter of law, as discussed above, courts do have "some flexibility" in applying the "credit as true" rule to such testimony. See Connett, 340 F.3d at 876; Schneider, 223 F.3d at 976.

Defendant further argues, however, that there is a conflict among the decisions issued by the Ninth Circuit concerning the "credit as true" rule, and that the Court of Appeals has been unable to find any way to reconcile those decisions other than to conclude that the courts have flexibility in applying it.  Plaintiff instead would have the Court treat the "credit as true" rule as being prudential, applying it when the weight of evidence suggests that the improperly rejected evidence probably is true and where there has been undue delay in resolving the claimant's case.  Although defendant laments the lack of any greater precision from Ninth Circuit in addressing exactly how to apply the "credit as true" rule, the undersigned sees no need to adopt the approach defendant advocates.

The Ninth Circuit's decisions in Smolen, Bunnell and Connett, while perhaps not as precise as one would like, do provide a fairly clear guideline on how to proceed in determining whether to remand a case for further administrative proceedings or for an award of benefits.  First, as expressly stated by the Court of Appeals in Connett, the Court has some flexibility in applying the "credit as true" rule.  Second, where the ALJ is not required to find a claimant disabled on the crediting of the evidence, the Ninth Circuit held in Bunnell that this constitutes an outstanding issue that must be resolved, thereby indicating that the second part of the Smolen test has not been satisfied.  Because it is only when all three Smolen factors are satisfied that remand for an award of benefits is warranted, if the improperly rejected medical evidence or claimant testimony is insufficient to establish disability, further proceedings would be necessitated.

1   Lastly, in none of these cases did the Court of Appeals require the presence of undue delay.

2          Here, the parties agree the ALJ improperly rejected the opinions of Drs. Connolly and Brzusek and

3   erred in discounting plaintiff's symptom testimony.  Because Dr. Connolly and Dr. Brzusek both opined

4   that plaintiff was unable to work and therefore disabled despite the lack of objective neurological findings

5   in the record, and because those two opinions have not been sufficiently contradicted by any other medical

6   source opinion in the record, they should be credited as true.  In addition, given that Dr. Connolly and Dr.

7   Brzusek were unequivocal in their opinions, the ALJ would have been required to find plaintiff disabled on

8   the crediting thereof.  Similarly, plaintiff's testimony regarding her need to lay flat during the day, and the

9   vocational expert's testimony that she would be unemployable because of that need, further would require

10  the ALJ to find plaintiff disabled on the crediting of such testimony.

11         Accordingly, parts one and three of the Smolen test have been met.  The question that thus remains

12  is whether there are any outstanding issues requiring resolution before a determination of disability can be

13  made.  Again, this case is similar to that in Benecke, where the ALJ erred in evaluating both the claimant's

14  treating physicians' opinions and her own testimony, it was clear that remand for further administrative

15  proceedings would serve no useful purpose, and the Ninth Circuit remanded the case to the Commissioner

16  for an outright award of benefits.  Here too, defendants' assertions that the gathering of additional medical

17  evidence is needed notwithstanding, it is clear that the ALJ would have to find plaintiff disabled based on

18  the opinions of Dr. Connolly and Dr. Brzusek and the testimony of plaintiff and the vocational expert, and

19  that remand for further proceedings would serve no useful purpose.

20                                              CONCLUSION

21         Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

22  was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for

23  an award of benefits.

24         Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

25  the parties shall have ten (10) days from service of this Report and Recommendation to file written

26  objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

27  objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

28  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 4,**

1   **2008**, as noted in the caption.

2        DATED this 10th day of December, 2007.

3

4

5   Karen L. Strombom
    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 12